IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICK SELIG,
         Plaintiff,

V.                                         Civil Action No. 3:19-cv-769

NIAGARA RECOVERY
SOLUTIONS MANAGEMENT
GROUP, LLC, et al.,
         Defendants.

## OPINION

Patrick Selig has sued Niagara Recovery Solutions Management Group, LLC ("Niagara

Recovery Solutions"), and NRS Billing Services, LLC, alleging violations of the Fair Debt

Collection Practices Act ("FDCPA") and Virginia common law.[1]  Selig served the defendants

with the summons and complaint in October, 2019.  The defendants failed to file responsive

pleadings, and Selig moved for entry of default.  Pursuant to Federal Rule of Civil Procedure

55(a), the Clerk entered default on December 18, 2019.  The plaintiff now moves for default

judgment under Rule 55(b).[2]

---

[1] Specifically, 15 U.S.C. §§ 1692d(6), 1692e(5), 1692e(7), 1692e(10), 1692e(11), 1692g, and common law fraud.  Selig does not pursue default judgment based on his allegations in Count One, which alleges a violation of 15 U.S.C. § 1692d(2).  The Court, therefore, will not consider liability under that Count.

[2] Selig has not sent the defendants a copy of the motion for default judgment or memorandum in support because Federal Rule of Civil Procedure 5 does not require service on "a party who is in default for failing to appear." (*See* Dk. No. 9, at 2.)  Because the defendants are limited liability companies and the record indicates that counsel for the plaintiff has spoken with counsel for the defendants, the Court will not require Selig to serve the defendants with a copy of the motion for default judgment or provide the warnings pursuant to *Roseboro v. Garrison*, 5 28 F.2d 309, 310 (4th Cir. 1975).  But in the future, the Court recommends that counsel for the plaintiff send the defendant a copy of the motion for default judgment in all cases.

## I. **FACTS ALLEGED IN THE COMPLAINT**[3]

The defendants are debt collectors that share the same office and coordinate business activities with one another. At some point, they acquired details about Selig's debt with Clear Loan Solutions. Over a six-month period, the defendants left several nearly identical voicemails on Selig's cell phone about potential legal action regarding the debt. On the calls, the defendants did not identify themselves or the matter about which they called. The caller simply identified herself as Rebecca. The defendants also used voice-over-IP (VOIP) phones that appeared to originate in Baltimore, Maryland. The defendants, however, are located in New York. In all communications with Selig, the defendants used the name "NRS Management" and did not provide their trade names or addresses.

During the first call on October 17, 2018, Rebecca said that she was a "courier with the county tasked with serving" Selig legal documents and that this was her second time trying to locate Selig at his residence or place of employment. (Compl. ¶ 9.) She told Selig to contact "the filing party" at a Maryland phone number to stop service of process and avoid a missed court appearance. (*Id.*)

During the second call on October 23, 2018, Rebecca indicated that this was her "third and final attempt to locate" Selig and obtain his signature. (*Id.* ¶ 15; Dk. No. 10, at 2-3.) She provided a different Maryland phone number. On March 23, 2019, the defendants left a third message on Selig's cell phone with another Maryland phone number and a reference number.

---

[3] The motion for default judgment contains new facts not alleged in the complaint. On default judgment, however, "[t]he court must . . . determine whether the well-pleaded allegations in [the plaintiff's] *complaint* support the relief sought in this action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (emphasis added). Thus, to the extent that the motion for default judgment alleges new facts, the Court will not consider those allegations.

The defendants knew Selig's address when they made these calls, but they did not send Selig any written notice about the debt they were trying to collect. Further, despite these messages, the defendants never took legal action against Selig.

On October 17, 2019, the defendants sent a letter from "NRS Management, LLC" demanding payment for the debt. (Dk. No. 1-2.) The letter included a phone number but no address. That same day, they also sent Selig a settlement offer letter under the name "NRS Management, LLC," which also included a phone number but no address. (Dk. No. 1-3.) NRS Management, LLC, is not the defendants' registered trade name. The defendants tell those who respond to settlement offer letters to make the payment using a payment instruction sheet. Here, the instruction sheet listed "NRS Billing Services, LLC," as the entity that would charge Selig's credit card. (Dk. No. 1-4.)

Selig contends that these messages have caused him stress and anxiety, and that he has spent time researching the identity of the person or entity behind the calls. (*See* Dk. No. 10-3 ¶¶ 23-32.) He also worried about what future actions the caller might take and that there was a legal proceeding against him.

## II. <u>DISCUSSION</u>

A defendant in default admits the well-pleaded factual allegations in the complaint. *See Ryan*, 253 F.3d at 780. Thus, in reviewing a motion for default judgment under Rule 55(b), courts accept as true plaintiffs' well-pleaded allegations regarding liability. *Id.* Courts must then determine whether the allegations support the relief sought. *Id.*

### A. *Joint Liability*

As an initial matter, Selig alleges that the defendants are jointly liable for violations of the FDCPA and fraud. In Virginia, parties engaged in a joint enterprise are jointly liable for acts

committed within the scope of the enterprise. *See Alban Tractor Co. v. Sheffield*, 220 Va. 861, 863, 263 S.E.2d 67, 68 (1980); *see Bickley v. Gregory*, No. 2:16-cv-131, 2016 WL 6306148, at *8 (E.D. Va. Oct. 7, 2016), *report & recommendation adopted*, 2016 WL 6398804 (E.D. Va. Oct. 26, 2016) (holding the defendants jointly and severally liable for FDCPA violations). To hold defendants jointly liable, the plaintiff must plead (1) "a community of interest in the object and purpose of the undertaking," and (2) "an equal right to direct and govern the movements and conduct of each other" in the enterprise. *Alban Tractor Co.*, 220 Va. at 863, 263 S.E.2d at 68.

To satisfy the first element, the plaintiff must allege a common business purpose or benefit. *Jarrell v. Kroger Ltd. P'ship I*, 33 F. Supp. 3d 645, 649-50 (E.D. Va. 2014). Here, NRS Management, LLC—presumably Niagara Recovery Solutions—sent Selig a settlement offer and indicated that NRS Billing Service would process the payment of the debt. (*See* Dk. Nos. 1-3, 1-4.) Thus, the defendants shared a common business purpose of collecting on Selig's debt.

To satisfy the second element, the plaintiff must allege that the defendants have "equal right to direct the operation." *Jarrell*, 33 F. Supp. 3d at 650. Selig alleges that the defendants work in the same location and in tandem with one another. Thus, they have an "equal right to direct the operation." *Id.* Accordingly, the Court may hold the defendants jointly liable for Selig's claims.

### B. FDCPA Claims

"To prevail on an FDCPA claim, a plaintiff must allege that: (1) he . . . was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the defendant is a debt collector as defined by the FDCPA; and, (3) the defendant engaged in an act or omission prohibited by the FDCPA, such as using a false, deceptive, or misleading representation or means

in connection with the collection of any debt." *Thurmond v. Bayview Loan Servicing, LLC*, No. 3:17cv196, 2017 WL 6347961, at *8 (E.D. Va. Dec. 12, 2017).[4]

Selig adequately pleads the first element as to each FDCPA claim. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FDCPA defines "debt" as an obligation to pay money arising out of a transaction "primarily for personal, family, or household purposes." *Id.* § 1692a(5). Selig, a natural person, took out a loan with Clear Loan Solutions to pay family financial obligations. (*See* Dk. No. 10-3 ¶ 7.) The defendants called Selig several times over a six-month period to collect on that loan. Selig, therefore, satisfies the first element.

Further, Selig alleges that the defendants are "debt collectors" as defined by the FDPCA. § 1692a(6). A "'debt collector' means any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* Selig alleges that the defendants contacted him to collect on an outstanding debt on behalf of another company. Thus, Selig adequately pleads the second element as to each FDCPA claim. Finally, for the reasons set forth below, Selig alleges that the defendants engaged in acts and omissions that violated the FDCPA, satisfying the third element.

---

[4] When assessing whether an FDCPA violation occurred, courts use a "three part test to determine if a debt collector sent a communication in connection with the collection of a debt: (1) the nature of the parties' relationship, (2) the purpose and context of the communication, and (3) whether an animating purpose of the communication is to induce payment." *Miller v. MediCredit, Inc.*, No. 3:18-cv-00603, 2019 WL 6709388, at *5 (E.D. Va. Dec. 9, 2019) (quotations omitted). Here, Selig had no relationship with the defendants other than through the debt collection calls and letters. This demonstrates that the defendants contacted Selig to collect on the debt. Further, the defendants communicated with Selig to get him to pay them the amount he owed on the Clear Loan Solutions loan. The defendants, therefore, communicated with Selig to induce payment. Accordingly, the defendants sent the communications in connection with the collection of a debt.

### 1. *Count Two: Lack of Meaningful Disclosure, § 1692d(6)*

The FDCPA prohibits debt collectors from engaging in conduct to "harass, oppress, or abuse any person in connection with the collection of a debt." § 1692d. Debt collectors that place telephone calls "without meaningful disclosure of the caller's identity" violate this section. § 1692d(6). To satisfy this provision, the caller must disclose "first, the name of the debt collection company, and second, the nature of the debt collection company's business." *Miller v. MediCredit, Inc.*, No. 3:18-cv-603, 2019 WL 6709388, at *8-9 (E.D. Va. Dec. 9, 2019).

Here, Selig alleges that the defendants only disclosed the caller's first name—not the name of the debt collection companies—in the voicemails. *See id.* Further, the defendants did not explain the nature of their business beyond vague generalities. *See id.* Because the voicemails lacked meaningful disclosures, the Court will enter default judgment as to Count Two.

### 2. *Count Three: Threat to Take Action Not Intended to Be Taken, § 1692e(5)*

Section 1692e(5) prohibits debt collectors from threatening "to take any action that cannot legally be taken or that is not intended to be taken." § 1692e(5).[5] Accordingly, a debt collector violates § 1692e(5) "if (1) a debtor would reasonably believe that the notices threaten legal action; and (2) the debt collector does not intend to take legal action." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).

Here, the voicemails indicated that the defendants were serving Selig with legal papers and that failing to respond would result in a missed court appearance. These statements suggest that the defendants already initiated legal proceedings. But the defendants never pursued legal action.

---

[5] Courts assess § 1692e claims using a "least sophisticated consumer standard." *Lembach v. Bierman*, 528 F. App'x 297, 302 (4th Cir. 2013) (per curiam). Under that standard, "a false [material] statement that would not mislead the 'least sophisticated consumer' is not actionable." *Id.* A statement is materially misleading when the statement "affect[s] a consumer's ability to make intelligent decisions as to the debt." *Arnett v. Hodges Law Office, PLLC*, No. 3:18-cv-370, 2019 WL 4195343, at *3 (E.D. Va. Sept. 4, 2019).

Thus, the least sophisticated consumer would assume that the defendants had taken or would take legal action. *See id.* Because such behavior violates § 1692e(5), the Court will enter default judgment as to Count Three.

3. *Count Four: False Representations or Implications to Disgrace the Consumer, § 1692e(7)*

Section 1692e(7) prohibits debt collectors from making false representations or implications "that the consumer committed any crime or other conduct in order to disgrace the consumer." § 1692e(7). The statute also proscribes conduct that shames or humiliates a debtor, such as calling into question the debtor's honesty and implying that the individual has dishonest intentions. *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 763 (7th Cir. 2006).

In this case, the defendants warned Selig about a missed court appearance. At a minimum, the messages would make the least sophisticated consumer wonder whether he committed a crime by failing to pay the debt. *See In re Accelerated Recovery Sys., Inc.*, 431 B.R. 138, 146 (W.D. Va. 2010). Because such statements violate § 1692e(7), the Court will enter default judgment as to Count Four.

4. *Count Five: False Representation or Deceptive Means to Collect a Debt, § 1692e(10)*

Section 1692e(10) prohibits debt collectors from using false representations or "deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." § 1692e(10). Falsely threatening legal action qualifies as prohibited conduct under § 1692e(10). *See Nat'l Fin. Servs.*, 98 F.3d at 138-39. But a message that "reveals that the caller is a debt collector, that the call is part of an attempt to collect a debt, and that any information obtained will be used in that attempt" does not violate this provision. *Levins v. Healthcare Revenue Recovery Grp.*, 902 F.3d 274, 284 (3d Cir. 2018).

Selig contends that the defendants intentionally concealed their identity and that they already had his address. He also alleges that the defendants falsely represented an upcoming court date because they never took any legal action against him. This conduct violates § 1692e(10). *See Nat'l Fin. Servs.*, 98 F.3d at 138-39. Indeed, these statements would "unjustifiably frighten" the least sophisticated consumer to believe that a lawsuit was pending against him. *Id.* at 139. Accordingly, the Court will enter default judgment as to Count Five.

### 5. *Count Six: Failure to Disclose Information in Communications with the Consumer, § 1692e(11)*

Section 1692e(11) prohibits debt collectors from failing to disclose in the initial communication with the consumer "that the debt collector is attemping to collect a debt and that any information obtained will be used for that purpose." § 1692e(11). Here, Selig alleges that the defendants did not disclose that they were debt collectors in any of their voicemails, which included their first communication with him. Because the absence of this disclosure violates § 1692e(11), the Court will enter default judgment as to Count Six.

### 6. *Count Seven: Failure to Provide Written Notice, § 1692g*

Section 1692g requires a debt collector to provide the consumer with a written notice containing the following information within five days after the initial communication with the consumer:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 1692g(a).

Selig alleges that the defendants first contacted him by phone on October 17, 2018. The defendants, however, did not send him a written communication until October 17, 2019—one year after their initial communication. Even then, they did not include the information required by § 1692g. Because the defendants failed to provide the written notice required by § 1692g, the Court will enter default judgment as to Count Seven.

### C. Count Eight: Common Law Fraud

Selig argues that the defendants' false representations constitute fraud. To prove fraud, a plaintiff must show "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) damages resulting from that reliance." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999) (applying Virginia law). Additionally, concealing a material fact that a defendant has a duty to disclose can amount to fraud by omission. *See Davis v. Wells Fargo Bank*, N.A., No. 3:13-cv-586-HEH, 2014 WL 106257, at *6 (E.D. Va. Jan. 8, 2014). The plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

As discussed above, the defendants falsely represented their identity and concealed other facts that they were required to disclose under the FDCPA, such as their trade names and addresses. Selig also alleges that the defendants used a VOIP phone to conceal their identity and location. By concealing this information, Selig could not discern the true identity of the caller or the nature of the issue giving rise to the purported legal action. Based on these misrepresentations, Selig believed that the defendants were taking legal action against him, causing him to suffer

9

anxiety and spend time and resources trying to identify the caller and the basis for the legal action. Thus, Selig has alleged the elements of common law fraud claim with sufficient particularity. Accordingly, the Court will enter default judgment as to Count Eight.

## III. RELIEF

Having established liability for violations of the FDCPA and fraud, the Court must next determine the appropriate relief. "Although well-pleaded factual allegations are accepted as true for default judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of damages." *S. Bank & Trust Co. v. Pride Grp., LLC*, No. 2:14cv255, 2015 WL 410726, at *4 (E.D. Va. Jan. 28, 2015). Accordingly, a court must "independently calculate the appropriate amount of damages." *Id.* Selig seeks $25,000 in actual damages, $1,000 in statutory damages per defendant, $50,000 in punitive damages, $18,556.37 in attorneys' fees and costs, and interest.

### A. Actual Damages

Selig contends that he suffered lost time and emotional distress as a result of the defendants' conduct. Thus, he requests $25,000 in actual damages.

In Virginia, a plaintiff "may recover damages for emotional distress, absent proof of physical injury or willful and wanton conduct, if the defendant has committed an intentional tort against the plaintiff." *McCune v. Xerox Corp.*, 225 F.3d 654, at *5 (4th Cir. 2000) (per curiam) (table decision). Fraud constitutes an intentional tort. *See id.* A plaintiff, however, must do more than allege in a conclusory fashion that he suffered emotional distress. *See id.* For example, "[seeking] medical treatment for the distress, . . . [being] unable to function as usual, . . . [withdrawing] from activities, or . . . [suffering] physical manifestations caused by the distress" may support emotional distress damages. *Id.*; *see also Arriola v. Pardo*, No. 1:14-cv-

0745, 2015 WL 3404725, at \*9 (E.D. Va. May 26, 2015) (awarding $50,000 in noneconomic damages "for the loss of [the plaintiffs'] home, credit damage, damage to reputation, embarrassment, humiliation, and other emotional and mental distress").

Similarly, under the FDCPA, a plaintiff may recover actual damages, including damages for emotional distress. *See* 15 U.S.C. § 1692k(a)(1); *Dryden v. Accredited Collection Agency, Inc.*, No. 3:14cv255, 2015 WL 3646649, at \*5 (E.D. Va. June 10, 2015). But "[c]ourts are reluctant to award damages for emotional distress from violations of the FDCPA absent an aggrieved plaintiff receiving mental health treatment or evidence that emotional distress concretely affected a plaintiff's personal or professional life." *Valdez v. Arm Wyn, LLC*, No. 7:14-cv-263, 2015 WL 3661102, at \*3 (W.D. Va. June 12, 2015) (quotations omitted).[6]

Selig has provided an affidavit detailing the emotional distress he suffered. (*See* Dk. No. 10-3.) He contends that the defendants called him several times over a six-month period. As a result of the calls, he spent time researching the caller and the basis for the legal action. Selig worried that the defendants had taken legal action against him, and that the caller would call or come to his work, jeopardizing his current and future employment. He also worried that the defendants would show up at his home. The messages increased his anxiety because "there seemed to be no limit to what actions the caller would take next." (*Id.* ¶ 30.)

---

[6] *See also Dryden*, 2015 WL 3646649, at \*5 (declining to award emotional distress damages because the plaintiff provided no more than "mere conclusory allegations" to support the request); *Leto v. World Recovery Serv., LLC*, No. 3:14cv00489, 2015 WL 1897060, at \*3 (W.D.N.C. Apr. 27, 2015) (awarding $1,000 in actual damages because "five months of modest anxiety and stress does not, without more, support an award of $10,000.00"); *Bickley*, 2016 WL 6306148, at \*8 (awarding the plaintiff $2,000 of the requested $15,000 in emotional distress damages "in part because there is no evidence that Ms. Bickley received mental health treatment in connection with the defendants' misconduct").

Selig's affidavit supports an award of actual damages for emotional distress. The affidavit does not, however, support an award of $25,000. Selig did not suffer any economic damages. *Cf. Arriola*, 2015 WL 3404725, at *9. Further, although he feared that the defendants would cause problems in his personal or professional life, he does not describe any "physical manifestations caused by the distress" or other concrete effect it had on his daily functioning. *McCune*, 225 F.3d at 654; *see also Valdez*, 2015 WL 3661102, at *3. Finally, Selig did not require mental health treatment as a result of this conduct. *See McCune*, 225 F.3d at 654.; *Bickley*, 2016 WL 6306148, at *8. Accordingly, the Court will award the defendant $1,000 in actual damages.

### B. Statutory Damages

Courts may award up to $1,000 in statutory damages for violations of the FDCPA. *See* § 1692k(a)(2)(A). Courts may consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." § 1692k(b)(1). As discussed above, the defendants intentionally violated multiple FDCPA provisions by calling Selig three times over a period of six months and sending him two letters. Thus, their conduct supports an award of statutory damages under the FDCPA. *See Valdez*, 2015 WL 3661102, at *3 (awarding $1,000 in statutory damages against a defaulting defendant who called the plaintiff three times to collect on a debt). Accordingly, the Court will award a total of $1,000 in statutory damages pursuant to § 1692k(a)(2)(A).[7]

---

[7] Selig contends that courts may award $1,000 per defendant in cases involving multiple defendants. But both cases he relies on limited the total statutory damages to $1,000 even though the defendants were jointly and severally liable. *See Bentkowsky v. Benchmark Recovery, Inc*, No. 13-cv-01252-VC, 2015 WL 502948, at *1-3 (N.D. Cal. Feb. 3, 2015); *Hollback v. Rothman Mediation Servs., LLC*, No. 2:13-cv-1264, 2014 WL 3889473, at *1 (S.D. Ohio Aug. 7, 2014). The Court, therefore, declines to award $1,000 in statutory damages per defendant.

## *C. Punitive Damages*

Selig also seeks an award of $50,000 in punitive damages for his fraud claim. Under Virginia law, a plaintiff harmed by an intentional tort may sue for punitive damages up to $350,000. *See* Va. Code Ann. § 8.01-38.1. But "[p]unitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Jordan v. Sauve*, 219 Va. 448, 452, 247 S.E.2d 739, 741 (1978). Because punitive damages are not intended to compensate the plaintiff, "[t]he amount of punitive damages awarded should bear some reasonable relationship to the actual damages sustained and to the measure of punishment required." *Gazette, Inc. v. Harris*, 229 Va. 1, 51, 325 S.E.2d 713, 747 (1985).

Here, the defendants misled Selig several times over a period of six months. Although those calls resulted in stress and frustration, Selig suffered no economic loss. *Cf. Arriola*, 2015 WL 3404725, at *9 (awarding punitive damages because "both defendants participated in fraudulently obtaining and then squandering plaintiffs' money"). Simply put, Selig has not alleged that the defendants "acted wantonly, oppressively, or with such malice as to evince a spirit of [mischief] or criminal indifference to civil obligations." *Jordan*, 219 Va. at 452, 247 S.E.2d at 741. Moreover, Selig's request for punitive damages is not proportional to Selig's actual damages. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998) ("Virginia law requires that punitive damages be proportional to the compensatory damages awarded in a particular case."). Accordingly, the Court declines to award Selig punitive damages.

### D. Costs and Fees

#### 1. Costs

The FDCPA also provides that a consumer may recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." § 1692k(a)(3). Here, Selig seeks $431.37 in costs but does not provide any documents explaining what costs he incurred. Nonetheless, in light of the $400 filing fee Selig paid when he filed this lawsuit, the Court finds the request for costs reasonable. (*See* Dk. No. 1.)

#### 2. Attorneys' Fees

When a plaintiff in an FDCPA action establishes liability, the Court must award attorneys' fees except in "the most unusual circumstances." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). The court has the discretion to determine a reasonable award amount based on "the facts and circumstances of the underlying litigation." *Id.* at 629. "To calculate a reasonable attorney's fee, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate to determine a 'lodestar' figure." *Lundie v. Smith & Cohen, LLC*, No. 2:15-cv-291, 2016 WL 717113, at *5 (E.D. Va. Jan. 26, 2016), *report & recommendation adopted*, No. 2:15-cv-291, 2016 WL 715736 (E.D. Va. Feb. 18, 2016).

Courts considers the following factors:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009). But the court need not "engage in a lengthy discussion concerning what portion of the award is attributable to each factor." *Valdez*, 2015 WL 3661102, at *3.

Moreover, to establish a reasonable hourly rate, a party must support his fee request with specific evidence, such as affidavits from other lawyers, about the prevailing market rates in the relevant community. *See Robinson*, 560 F.3d at 244-45. "The degree of success obtained by [the] plaintiff" is the "most critical factor" in determining the reasonableness of a fee award. *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 671 (E.D. Va. 2004). Further, when requesting fees on default judgment, the "most important . . . factor[ ] [is] the results obtained for the client." *See Anderson v. Didonato*, No. 1:12-cv-00643, 2012 WL 6553675, at *5 (E.D. Va. Nov. 19, 2012), *report & recommendation adopted*, 2012 WL 6561259 (E.D. Va. Dec. 14, 2012).

Selig requests $18,125 in attorneys' fees, comprising 58 hours at $300/hour for Kevin Dillon and 1 hour at $725/hour for Leonard Bennett. Dillon spent his time researching, preparing and filing documents, speaking with his client, and speaking with attorneys for the defendants.[8] Bennett spent one hour reviewing the case and discussing case strategy with Dillon. (*See* Dillon Decl. ¶ 7.) This Court has previously awarded fees on default judgment for a similar number of hours worked. *See, e.g., Anderson*, 2012 WL 6553675, at *5-6 (awarding $11,534.35 in fees and costs for 50.3 hours of work by attorneys and paralegals); *see also Anderson*, No. 1:12-cv-643, Dk. No. 10-4, at 2 (E.D. Va. Aug. 17, 2012) (affidavit setting forth hours worked).

Selig also submitted a declaration of Dale W. Pittman, an attorney based in Virginia, who has litigated many federal cases concerning consumer protection laws. Pittman opines that Dillon

---

[8] Although the defendants did not appear in this action, the parties appear to have engaged in settlement discussions.

and Bennett are excellent attorneys at one of America's best consumer litigation firms. He further opines that Dillon and Bennett have spent a reasonable amount of time on this case and charged reasonable rates. Moreover, Selig has prevailed in this action and will receive a judgment in his favor.

Considering the documents submitted to support this award, time spent by attorneys in other FDCPA default judgment cases, and the relevant factors, the Court will award attorneys' fees in the amount of $18,125.

### E. Interest

Finally, Selig asks for "interest at the legal rate." It is not clear whether he seeks prejudgment or post-judgment interest.

Courts retain the discretion to award prejudgment interest in FDCPA cases. *See Bickley*, 2016 WL 6306148, at \*10. Because Selig has failed to explain how the Court should calculate prejudgment interest in this case, the Court declines to award that interest. *See id.* at \*11 ("Ms. Bickley has provided no guidance, in the form of a brief or otherwise, to help the Court determine how such an award may be calculated. Given these considerations, the undersigned declines to recommend that prejudgment interest be awarded.").

Courts award post-judgment interest in FDCPA cases pursuant to 28 U.S.C. § 1961. Section 1961 permits interest "on any money judgment in a civil case recovered in a district court." § 1961(a). For the reasons set forth above, the Court will enter a money judgment in this case. Accordingly, the Court will award interest at the rate set forth in § 1961(a).

### IV. CONCLUSION

For the foregoing reasons, the Court will grant in part Selig's motion for default judgment. The Court will enter judgment in favor of Selig as to Counts Two through Eight in the amount of

$20,456.37, representing $1,000.00 in actual damages, $1,000.00 in statutory damages, $18,456.37 in attorneys' fees and costs, and post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: _27 Jul_ _____ 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge